## Emergency Profits Tax. No. 2.

*Limited partnerships—Emergency profits tax—Acts of April 12, 1917, and June 28, 1923.*

Limited partnerships, created under and by the provisions of the Act of April 12, 1917, P. L. 55, entitled "An act relating to limited partnerships," are not subject to the emergency profits tax imposed by the Act of June 28, 1923, P. L. 876.

Department of Justice. Opinion to Hon. Samuel S. Lewis, Auditor General.

JOHN ROBERT JONES, Dep. Att'y-Gen., June 25, 1924.—The question raised by your letter of April 23, 1924, is whether or not limited partnerships formed under and by the provisions of the Act of April 12, 1917, P. L. 55, entitled "An act relating to limited partnerships," are subject to the tax imposed by the Act of June 28, 1923, P. L. 876, entitled "An act imposing an emergency profits tax for State purposes on the net income of certain corporations, joint-stock associations, limited partnerships and companies doing business in this Commonwealth; providing for the collection of such tax, and prescribing penalties."

Section 2 of the Act of June 28, 1923, P. L. 876, provides for the imposition of the tax and reads as follows:

"Section 2. Imposition of emergency profits tax. Every corporation shall be subject to, and pay into the treasury of the Commonwealth, an emergency corporation profits tax, at the rate of one-half of one per centum ($\frac{1}{2}$%) per annum, for two years, upon each dollar of the net income of such corporation, during the calendar years one thousand nine hundred and twenty-three and one thousand nine hundred and twenty-four, or in the event that such corporation is permitted by the Auditor General to make its report under the provisions of this act as of its fiscal year instead of the calendar year, then the tax imposed shall be paid on the net income of such corporation during its two fiscal years commencing at any time during the year one thousand nine hundred and twenty-three and ending at the end of the corresponding day in the year one thousand nine hundred and twenty-five.

"The tax hereby imposed shall be in addition to all taxes now imposed on any corporations under the provisions of existing laws."

It will be observed that under this section "every corporation shall be subject to, and pay into the treasury of the Commonwealth, an emergency corporation profits tax. . . ." What is included within the term "every corporation" is defined in section 1 of the act, the pertinent portion of which section reads as follows:

"Section 1. Be it enacted, &c., That the term 'corporation,' as used in this act, shall include every corporation having capital stock, every joint-stock association, limited partnership, and every company whatsoever, now or hereafter organized or incorporated by or under any laws of this Commonwealth, and every corporation, joint-stock association, limited partnership, and company whatsoever, now or hereafter incorporated or organized by or under the laws of any other state or territory of the United States, or by the United States, or by any foreign government, and doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth by or in the name of any limited partnership or joint-stock association, company or corporation whatsoever, association or associations, copartnership or copartnerships, person or persons, or in any other manner. The term shall not include building and loan associations, nor any corporation, joint-stock association, limited partnership or company now required to pay a tax upon its gross premiums under the provisions of section twenty-four of the act, approved the first day of June, one thousand eight hundred and eighty-nine (Pamphlet Laws four hundred and twenty), entitled 'A further supplement to an act entitled 'An act to provide revenue by taxation,' approved the seventh day of June, Anno Domini one thousand eight hundred and seventy-nine.' "

It will be observed that included within the class of corporations, as such term is used in this act of assembly, are "every . . . limited partnership, and every company whatsoever, now or hereafter organized or incorporated by or under any laws of this Commonwealth. . . ." This language is broad in its scope and considered solely as it is written in section 1 would include a limited partnership formed under the provisions of the Act of April 12, 1917, P. L. 55. However, the Act of June 28, 1923, P. L. 876, as in the case of all acts of assembly, must be considered as a whole. Each section must be interpreted and construed in its relation to other portions of the act. Turning to a consideration of the other sections of the act, it is found that section 4 provides for the making of reports to the Auditor General. These reports must be under oath or affirmation of the president, vice-president or other principal officer, and of the treasurer or assistant treasurer of the "corporation." Upon these reports, as appears by section 5, the Auditor General settles the account for taxes imposed by the act, from which settlement the "corporation" has the right of appeal "in the manner now provided by law for appeals from settlements of accounts by the Auditor General and State Treasurer."

In section 7 of the act it is provided that: ". . . In the event of the neglect or refusal of the officers of any corporation to make the report to the Auditor General as hereinbefore provided, it shall be the duty of the Auditor General to estimate the net income of such corporation for the calendar year next preceding and settle an account for taxes, penalties and interest thereon, from which settlement there shall be no right of appeal."

Section 8 of the act reads as follows:

"Section 8. Penalty when no report filed. If the said officers of any such corporation shall neglect or refuse to furnish the Auditor General with the report as hereinbefore provided, or shall knowingly make any false report, it

shall be the duty of the Auditor General to add 10 per centum to the tax of said corporation for each year for which such report was not so furnished, or for which a false report was knowingly made, which percentage shall be settled and collected, with the State tax imposed under the provisions of this act, in the usual manner of settling accounts and collecting such taxes."

A comparison of the Act of June 28, 1923, P. L. 876, with the Capital Stock Tax Act of June 1, 1889, P. L. 420, 427, and its amendments of June 8, 1891, P. L. 229, 233, June 8, 1893, P. L. 353, June 7, 1907, P. L. 430, June 7, 1911, P. L. 673, July 22, 1913, P. L. 903, June 2, 1915, P. L. 730, and July 15, 1919, P. L. 948, shows clearly the similarity in language, purpose and procedure in the matter of the filing of reports, settlements of taxes thereon, appeals therefrom, the duties of the officers of the corporations and the imposition of penalties.

Compliance with the provisions of the Act of June 28, 1923, P. L. 876, and the Capital Stock Tax Act of June 1, 1889, P. L. 420, of necessity, requires that the "limited partnership," which is subject to its provisions, has, and is authorized and empowered by the law of its creation to have, the officers which the statute imposing the duties requires it to have in order to comply with its provisions.

Upon an examination of the Act of April 12, 1917, P. L. 55, we find no provision for a president, vice-president or other principal officer, or for a treasurer or assistant treasurer. We thus find that it would be impossible for this class of partnerships to comply with the provisions of the Act of June 28, 1923, P. L. 876. It is not sufficient to say that there is nothing in the Act of 1917, providing for the creation of this class of limited partnerships, which prevents them having such officers. The answer to any such contention is two-fold. Even though one were to regard the kind of limited partnership created by the said Act of 1917 as a legal entity akin to a corporation, one is confronted with the plain proposition of law that a corporation, which is an artificial being existing only in contemplation of law, can have only such powers and such attributes as the law of its creation gives to it. In the case of Cooke v. Marshall, 191 Pa. 315, 321, the Supreme Court quotes with approval from the opinion of the Supreme Court of the United States in the case of Scovill v. Thayer, 105 U. S. 143, as follows: " 'As a general rule, corporations can have and exercise only such powers as are expressly conferred on them by the act of incorporation, and such implied powers as are necessary to enable them to perform their prescribed duties. . . .' "

Again, it must be borne in mind that this is a question of taxation and an interpretation and construction of a taxing statute, the precise question being whether or not a certain class of artificial beings recognized by the law and known as limited partnerships created by the Act of April 12, 1917, P. L. 55, is to be subject to a tax. It is fundamental in all taxing law that one must find the authority to impose a tax in the clear language of the law. A tax is not imposed by implication. It would be sufficient to rest my conclusion that limited partnerships formed under the provisions of the Act of April 12, 1917, P. L. 55, are not included within the class of "corporations" made subject to the tax imposed by the Act of June 28, 1923, P. L. 876, upon the foregoing reasons. However, we are not without a ruling upon a similar question in an opinion by Attorney-General McCormick, rendered to the Auditor General April 30, 1896, and reported in the Report and Official Opinions of the Attorney-General, 1887-96, and an opinion of the Dauphin County court in the case of Com. v. Biddle and Henry, 2 D. & C. 705.

In the aforementioned opinion of Attorney-General McCormick the question before him was whether or not limited partnerships created under the Act of March 21, 1836, P. L. 143, were included in the provisions of the Act of June 7, 1879, P. L. 112, the Act of June 1, 1889, P. L. 420, entitled "A further supplement to an act entitled 'An act to provide revenue by taxation,' approved the seventh day of June, Anno Domini one thousand eight hundred and seventy-nine," and the Act of June 8, 1891, P. L. 229. The Attorney-General reached the conclusion that such limited partnerships were not within the provisions of the said acts of assembly. After quoting at length from section 4 of the Act of June 8, 1891, P. L. 229, he said: "It would seem that the reports to the Auditor General, required by this act, were from corporations and limited partnerships having an organization with such officers as president, chairman, secretary and treasurer."

In line with the foregoing reasoning the Dauphin County court, in the case of Com. v. Biddle and Henry, 2 D. & C. 705, held that the limited partnerships here in question were not subject to taxation on capital stock under the Act of June 1, 1889, P. L. 420, and its amendments. It is not necessary to review the reasoning of the court. The Dauphin County court, after setting forth certain fundamental principles of statutory interpretation and construction, both as to statutes in general and taxing statutes in particular, turned to a consideration of the different kinds of limited partnerships created under the law of Pennsylvania, pointed out the different characteristics and powers of each, differentiating one from the other, pointing out wherein they were not only dissimilar to one another, but wherein some of them were similar and akin to corporations, and reached the conclusion that the limited partnerships which were created under and by the provisions of the Act of April 12, 1917, P. L. 55, were not subject to the tax imposed upon capital stock under and by the provisions of the Act of June 1, 1889, P. L. 420, and its amendments, and, after referring to the opinion of Attorney-General McCormick, said, *inter alia*, on page 708: ". . . The Limited Partnership Act of 1917 provides for the organization of a limited partnership, consisting of two or more persons, having one or more general partners and one or more limited partners. It is formed by executing a certificate and having the same recorded. The limited partner is not liable to creditors as the general partners are. A limited partnership organized under the Act of 1836 may become a limited partnership under this act. The Act of 1836, its supplements of April 16, 1838, P. L. 691, April 21, 1858, P. L. 383, March 30, 1865, P. L. 46, Feb. 21, 1868, P. L. 42, are all repealed by the Uniform Limited Partnership Act of 1917. Under the Act of 1836 and its supplements, and the Act of 1917, there is no provision for a president, vice-president, secretary or treasurer in the organization. There is no provision making the partnership a legal entity or allowing it to be sued in the partnership name without joining the partners, although there was in the supplement of March 30, 1865, P. L. 46, a provision that the 'business of the partnership shall be conducted under a firm in which all the names of all the general partners shall be inserted, except that when there are more than two general partners, the firm name may consist of either two of such partners, with the addition of the words 'and company.' But, in that event, the firm was required to place outside of its place of business some sign containing in 'legible English characters all the names in full of all the members of said partnership, stating who are general and who are special partners.' "

Again, on pages 710 and 711 of the opinion we read: ". . . It can hardly be contended that the partnership under the Act of 1836 and the Uniform

Limited Partnership Act of 1917 is a 'company' within the meaning of the taxing acts. The Act of July 15, 1919, P. L. 948, which is the last amendment of section 20 of the Act of 1889, and which contains the same language carried along from the other acts, provides that 'it shall be the duty of the president, vice-president, secretary or treasurer of every corporation having capital stock, every joint-stock association, limited partnership and every company whatsoever,' to make reports, so that the character of company included is a company which has officers of the kind designated. So, also, it may be said that the 'limited partnership' referred to is the kind that has such officers. A limited partnership under the Act of 1917 has no such officers. A partnership association under the Act of 1874, and the kind of partnership organized under the Act of 1899, may have them, because the law provides for them. The Limited Partnership Act describes the thing to be formed under that act as a 'limited partnership' and not as a 'company.' It has no legal entity, such as a corporation or joint-stock association. The Commonwealth has not invested it with privileges or franchises. It has simply regulated its organization. A limited partnership under the Act of 1917 may dissolve itself, and section 20 of the act provides that the retirement, death or insanity of a general partner dissolves it, unless the right is reserved in the certificate to the general partners to continue the business. Section 32 of the Act of 1889 provides that 'no corporation, company, joint-stock association or limited partnership made taxable by this act shall hereafter be dissolved by the decree of any Court of Common Pleas . . . until all taxes due the Commonwealth have been fully paid into the State Treasury,' etc. This is certainly inconsistent with a limited partnership formed under the Uniform Act of 1917, which does not require the dissolution by the Court of Common Pleas. A limited partnership under the Act of 1917 not being a legal entity, a settlement against it would have to take the anomalous form of a settlement against all the partners individually and not against the partnership alone, as in the case of partnership associations which can sue and be sued in the association name.

"Furthermore, when we examine the Bonus Act of May 8, 1901, P. L. 149, we find that it specifically provides for a bonus 'on partnership associations' formed under the Act of June 2, 1874, P. L. 271, and 'every partnership' formed under the Act of May 9, 1899, P. L. 261. It does not subject limited partnerships formed under the Act of 1836, and now under the Limited Partnership Act of 1917, to the payment of any bonus.

"It would seem a rather anomalous position for the legislature to provide that a partnership, no matter how large or how many general partners it may have, if it had one special or limited partner with an interest ever so small, should be subject to taxation, and that the general partners would be required to pay the tax on the capital stock. We think that there is no such legislative intention to be gathered merely from the use of the words 'limited partnership' in the taxing acts, but that those words are the result of a confusion of terms due to the language of both the courts and the reporters of opinions. We are of opinion that the legislature intended to tax those partnership associations and partnerships which have the characteristics of a corporation and which have the officers and the organization to make the reports required in order to subject them to taxation. . . ."

In view of the foregoing, I am of the opinion that limited partnerships created under and by the provisions of the Act of April 12, 1917, P. L. 55, entitled "An act Relating to Limited Partnerships," are not subject to the provisions of the Act of June 28, 1923, P. L. 876, entitled "An act imposing

an emergency profits tax for State purposes on the net income of certain corporations, joint-stock associations, limited partnerships and companies doing business in this Commonwealth; providing for the collection of such tax; and prescribing penalties," and are, therefore, not subject to the tax imposed under and by its provisions.

From C. P. Addams, Harrisburg, Pa.