Pennsylvania Company's Appeal.

Argued January 4, 1940.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, BARNES and PATTERSON, JJ.

*Abraham Wernick,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor, for appellant.

*Francis H. Bohlen, Jr.,* with him *Saul, Ewing, Remick & Saul,* for appellee.

PER CURIAM, February 1, 1940:

The judgments are affirmed on the following quotation from the adjudication of President Judge FINLETTER filed in the court below:

"The question before us is whether or not investment trust certificates are subject to the four-mill tax for county purposes, which is provided for in the Act of June 17, 1913, P. L. 507. The question involves an interpretation of that statute.

"Plainly no purpose to tax all personal property is indicated. First, because the opening clause limits property subject to the tax to 'the classes of property hereinafter enumerated,' and, secondly, because the Act describes the property with which it is concerned with great particularity and with an almost studious avoidance of general phrases, and where, in a few instances hereinafter discussed, general phrases are used, they are always so linked with the context as to limit the generality of their application, in other words, to compel the application of the rule of ejusdem generis.

"Considering the language of the statute, it is evident that the Legislature intended to particularize the kinds of property affected rather than to deal with all-embracing generalities. If there had been any intent to tax all kinds of personal property a phrase of twenty words would have been all that was necessary. On the contrary, it is evident that the intention was to describe taxable property in such a way as to be clearly intelligible to the citizen who was to bear the burden. The popular name of the property taxed is invariably used —'mortgages,' 'promissory notes,' 'bonds,' 'judgments,' 'loans,' 'car trust securities,' 'shares of stock,' 'annuities.' The question is, we think, most pertinent, 'If investment trust certificates were intended to be taxed, why were they omitted from the categories of taxable

personal property?' They are a well known form of security, in extensive use throughout the country by persons who do not wish to have all their eggs in one basket. Their omission from the detailed catalog of taxable forms of property is eloquent of the legislative intent. Especially is this so when one has in mind the fundamental rule of interpretation of taxation statutes, that they must be strictly construed. If the expressed intention is to be so treated, what can be said of the total omission of a particular kind of property? It would be a curious 'strict interpretation' to add a class that was not mentioned in the statute.

"There are reasons why the securities in question should be omitted. The most striking one being that to tax them would be clear double taxation, once of the shares of stock and again of a certificate of ownership. In the form of the certificate now before us, treble taxation would result, as will appear later when we describe the form of the certificates in question. We of course recognize that double taxation is not in itself unlawful. Circumstances may and occasionally do justify it. But it is to be avoided if that is possible.

"Before discussing the application of certain general phrases of the Act, which are relied upon by the defendant, it would be well to know what is the nature of the interest sought to be taxed.

"It is a form of 'Investment Trust.' A foreign trust company, which we will call (in the instant case) the Primary Trustee, has in its possession shares of stock of one or more corporations. It also has sums of money. This property it retains, and issues to contributors certificates of interest in the general fund, made up as we have said. The certificate holder does not own the stock or the money, but only the undivided interest, or the certificate of interest. This may be in part money, and at the expiration of the trust is nothing but money.

"This is the general form of these trusts. In the instant case another trust is superimposed. The Primary

324

Trustee enters into an agreement with The Pennsylvania Company, the effect of which is that the Primary Trustee is trustee of stocks and money for the benefit of the Pennsylvania Company, which holds all of the certificates issued by the Primary Trustee, and, holding only these certificates, declares itself trustee of this beneficial interest for the benefit of investors, to whom are issued certificates representing their interest in this Secondary Trust, that is, the equitable interest of the Pennsylvania Company in the Primary Trust. Thus the Pennsylvania Company has two capacities. It is cestui que trust of the Primary Trust, and it is Trustee of the Secondary Trust. The trust res of the Primary Trust is the stocks and moneys. The trust res of the Secondary Trust is the certificates issued by the Primary Trustee. The Pennsylvania Company never holds the stocks and money. These remain in the possession of the Primary Trustee throughout.

"The county's position is that the interest of the Pennsylvania Company above described comes within the following phrases of the statute:

"(1) 'All shares of stock of any . . . company;'

"(2) Moneyed capital in the hands of individual citizens of the State;

"(3) Moneys loaned or invested in other States.

"(1) We think it clear that the interest described above can not be regarded as 'shares of stock.' These words have a definite connotation involving attributes wholly different from the beneficial interests in a trust fund held by the appellant. We think investment trust certificates by no reasoning may be made to fit shares of stock or interest in shares of stock.

"(2) All 'moneyed capital in the hands of individual citizens of the State.' Standing alone this might be regarded as a catch-all phrase to include all other forms of interest not yet covered by the statute. To regard it as such would war with the whole plan of the Act, which, as we have said above, obviously was to particu-

larize and to be specific, no doubt with the purpose in mind of clearly stating interests to be taxed so as to meet the rule of strict construction.

"Again such an interpretation would come in contact with the ejusdem generis doctrine of interpretation. This general phrase must be interpreted in the light of its context. Read as a whole, and not separated from the rest of the list of taxable categories, the statute provides that all personal property thereinafter enumerated, mortgages, notes, bonds, loans, car trust securities and other moneyed capital of the kind we have just described, shall be taxed. In other words, this phrase might be replaced by the words 'and the like.' It would scarcely be a strict construction of the statute to say that this omnibus phrase was intended to cover all forms of personal property not already enumerated. It might be extended to meet forms of personal property similar to those enumerated, but not totally different. But there is not one of the enumerated interests that does not differ fundamentally from an investment trust. It may be added that this phrase has been used in our taxation acts since 1879, and no instance has, been pointed out to us in which property has been taxed under it. The nearest approach to it which has been called to our attention is in an opinion of the Attorney General, that a life insurance policy that had a surrender value was not included in this phrase. Opinion of Attorney General, 4 Pa. Dist. R. 780.

"The Attorney General points out that a specific provision taxing property must be found if it is to be taxed. He stressed the fact that the uniform practice of the Revenue Department for twelve years was to exclude such policies from the returns, and if the Legislature had disagreed it would have legislated specifically on the subject. And this can be said of investment trusts with which we are dealing.

"In addition, effect must be given to the rest of the phrase:—'In the hands of individual citizens of the

State.' This phrase is used only once in the statute and must have a special meeting [meaning]. The Pennsylvania Company, as Secondary Trustee of an equitable interest in another trust, cannot be called an individual citizen. It is likely that what was meant was individual investors, that is, in the instant case, the individual certificate holders. But it is not sought in this proceeding to tax them. We note in passing that corporations are not usually described as 'citizens.'

"In our opinion investment certificates are not included in the phrase we have been discussing.

"(3) 'Moneys loaned or invested in other States.'

"This is clearly a catch-all phrase which, if liberally construed in favor of the county, would include the purchase of certificates of the Primary Trustee issued in New Jersey. But not so if construed, as we must construe it, strictly in favor of the taxpayer. So construed its general terms include all peculiar and nameless investments that are not capable of being described by their popular names. It cannot include a well known investment which could easily be described by its popular name. Suppose the catalog of taxable securities had not included mortgages, or corporate bonds. Would an intent to tax them be carried by the general words under discussion? We think not. On the contrary, we think an intent not to tax such well known securities would be drawn and should be drawn from the failure to nominate them in the statute.

"What we have said about the application of the doctrine of ejusdem generis in discussing the phrase dealing with 'moneyed capital' applies to the phrase dealing with 'moneys invested in other States.' It means 'moneys invested in the kind of securities we have just referred to, not in well known securities we carefully omitted from our catalog.'

"The rule of strict construction should and does limit the application of these two catch-all phrases to specific interests enumerated in the same section of the act."

The costs shall be paid by the City of Philadelphia.