City of Pittsburgh, a Municipal Corporation, and Joseph L. Cosetti, Treasurer of the City of Pittsburgh, Appellants *v.* International Business Machines Corporation, Appellee.

Argued May 2, 1978, before President Judge Bow-MAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

*Grace S. Harris,* Executive Assistant City Solicitor, with her *Mead J. Mulvihill, Jr.,* City Solicitor, for appellants.

*Robert L. Frantz,* with him *George L. Cass,* and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., September 28, 1978:

The City of Pittsburgh and Joseph L. Cosetti, Treasurer of the City of Pittsburgh (Appellants/City) appeal a decision of the Court of Common Pleas which held that the International Business Machines Corporation (IBM) is exempt from the City's business privilege tax on rental receipts generated from the lease of IBM manufactured equipment within the City.

We affirm.

By authority of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6901 et seq. (Act 511), the City enacted Ordinance No. 675 (Ordinance) imposing a tax on the privilege of engaging in commercial activities within the City. Section 2(4) of Act 511, 53 P.S. §6902(4), circumscribes the City's taxing powers and provides, in pertinent part, as follows:

Such local authorities *shall not have authority* by virtue of this act:

. . . .

(4) To levy, assess and collect a tax on goods and articles *manufactured in such political subdivision* or on the by-products of manufacture . . . *or on any privilege, act or transaction related to the business of manufacturing* . . . by manufacturers . . . with respect to the goods, articles and products of their own manufacture. . . . (Emphasis added.)

IBM is a New York corporation which manufactures general purpose computers, accessory equipment and office equipment. It has no manufacturing plants in Pennsylvania, but it sells and leases equipment to customers throughout the Commonwealth. It also renders maintenance and repair service upon IBM equipment owned by others.

For the tax years here in question, IBM paid business privilege taxes on all repair and maintenance receipts but claimed a tax exemption by virtue of Section 2(4) of Act 511 on receipts from the *sale and lease* of equipment. The City allowed the exemption for sales receipts but levied taxes on rental receipts and IBM appealed to the court below. That court, relying on *Fischer v. Pittsburgh,* 383 Pa. 138, 118 A.2d 157 (1955), reasoned that sales receipts and rental receipts were

synonymous for taxing purposes and concluded that the City was without authority to tax the rental receipts. Also, relying on *Pillsbury Mills, Inc. v. Pittsburgh School District*, 408 Pa. 369, 184 A.2d 236 (1962), the lower court rejected the City's contention that only Pennsylvania manufacturers were exempt.

The City appeals to us and argues that the exclusionary language of Section 2(4) of Act 511 does not apply to out-of-state manufacturers and that it therefore has the power to tax IBM's rental receipts. It contends that prior case law, together with a proper construction of Section 2(4) of Act 511, instructs us that the legislature intended to shield only Pennsylvania manufacturers from taxation and, hence, that there is no tax exclusion for foreign manufacturers. We do not agree.

Act 511 is the repealer of a former tax enabling act, commonly known as the "Tax Anything Act."[1] The manufacturer exclusion clause contained within that Act was incorporated verbatim into Section 2(4) of Act 511.[2] On at least two occasions prior to the enact-

---

[1] Act of June 25, 1947, P.L. 1145, *as amended*, 53 P.S. §6851, repealed by the Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6901 et seq.

[2] The manufacturer exclusion clause of the Tax Anything Act stated in pertinent part as follows:

Section 1. A. Delegation of Taxing Powers and Restriction Thereon—

The duly constituted authorities of . . . cities of the second class . . . may, in their discretion . . . levy, assess and collect . . . taxes on . . . transactions . . . [and] privileges within the limits of such political subdivisions as they shall determine, except that such local authorities shall not have authority by virtue of this act . . . (4) to levy, assess and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture . . . or on any privilege, act or transaction related to the business of manufacturing . . . or on any privilege, act or

ment of the repealer, our Supreme Court dealt with the issue of whether the manufacturer exclusion clause applied to foreign manufacturers. In *General Foods Corp. v. Pittsburgh*, 383 Pa. 244, 118 A.2d 572 (1955), it decided that the manufacturer exclusion clause of the "Tax Anything Act" precluded a political subdivision from taxing any privilege, act or transaction relating to the business of manufacturing even though the goods or articles produced by the manufacturer were sold within that political subdivision and regardless of whether the manufacturer was local or foreign. *See also Pillsbury Mills, supra.*

Appellants argue that a proper construction of the manufacturer exclusion provision of Section 2(4) of Act 511 compels us to find that the legislature intended to exclude only local manufacturers from the business privilege tax. This argument fails. Section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1922 (4), mandates that:

> In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used
>
> . . . .
>
> (4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

It is also well established that the term "shall not have authority" as used in Section 2 of Act 511 con-

transaction relating to the business of processing by-products of manufacture. . . .

*See* Act of May 9, 1949, P.L. 898, *as amended*, 53 P.S. §685(a)(4), repealed by the Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6901 et seq.

stitutes a limitation on the City's power to tax and that any doubt relating to its construction must be resolved in favor of the taxpayer. *See Golden Triangle Broadcasting, Inc. v. City of Pittsburgh,* 31 Pa. Commonwealth Ct. 547, 377 A.2d 839 (1977). *See also Directory Publishing Co. v. Pittsburgh,* 205 Pa. Superior Ct. 423, 211 A.2d 509 (1965). *See also Fischer, supra.*

Finally, Appellants argue in the alternative that even if the exclusion is available to foreign manufacturers, IBM cannot enjoy its benefits because the leasing of IBM equipment is unrelated to its manufacturing function. This argument must also be rejected.

In *Fischer, supra,* our Supreme Court recognized that profit making is a privilege related to the business of manufacturing, and decided that the City was precluded from taxing the net profits emanating from the sale of manufactured products. It therein reasoned:

'[T]he sale of the products of manufacture is an essential part of the business of manufacturing; the power to manufacture implies the power to sell what it thus produced. . . . It is *only by selling* what it makes that a manufacturer can realize its profits from manufacturing.' The sale of the manufactured articles being, therefore, a privilege, act or transaction related to the business of manufacturing, it is equally a privilege related to the business of manufacturing to obtain profits therefrom. Viewed realistically, unless there were attendant upon such business the privilege of selling the manufactured articles at a profit, there would certainly be no manufacturing carried on at all, for the ordinary motivation of all business enterprise is to derive profits therefrom. A tax on the . . . profits of the business is a tax on that privilege.' (Emphasis added.)

383 Pa. at 143, 118 A.2d at 159.

*Fischer, supra,* tells us that "only by selling" its product could the manufacturer realize a profit. That observation was tailored to the nature of the business there in question and is not to be taken as a granted truism.[3] Here, IBM has a vast rental market from which it derives a substantial profit. We consider "profit" to be a privilege relating to the business of manufacture, and is not less a privilege because it is derived from the "leasing" of the manufactured product. We can discern no difference between a profit derived from the lease of equipment and that derived from a sale.

Accordingly, we

ORDER

AND Now, this 28th day of September, 1978, the order of the Court of Common Pleas of Allegheny County is affirmed.

---

[3] In *Fischer, supra,* the manufactured commodity was "bed springs and allied products" and was produced solely for sale and not rental.